United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GEORGE D. D. L.,[1]

    Plaintiff,

v.

ANDREW SAUL,

    Defendant.

Case No. 20-cv-03552-SK

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Regarding Docket Nos. 17, 22

This matter comes before the Court upon consideration of Plaintiff's motion for summary judgment and the cross-motion for summary judgment filed by Defendant, the Commissioner of Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully considered the administrative record, the parties' papers, and relevant legal authority, and the record in the case, the Court hereby GRANTS Plaintiff's motion and DENIES the Commissioner's cross-motion for summary judgment for the reasons set forth below. The Court REMANDS this matter for further proceedings.

**BACKGROUND**

Plaintiff was born on April 19, 1957 and was just under 55 years old at his alleged onset date but was over 55 years old by the date he was last insured on September 30, 2015. (Administrative Record ("AR") 16, 170.) On April 4, 2017, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging he was disabled starting on February 1, 2012. (AR 170-71.)

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

On October 23, 2018, Plaintiff, accompanied by counsel, testified at a hearing before the Administrative Law Judge ("ALJ"). (*Id*.) Plaintiff and vocational expert John J. Komar, Ph.D., both testified at the hearing.

The ALJ found that Plaintiff had the severe impairments of degenerative joint disease of the bilateral shoulders and cervicalgia, and those impairments were severe. (AR 18.) The ALJ determined that Plaintiff's impairments did not meet or equal any listed impairments and that Plaintiff had the following residual functional capacity (RFC):

> Perform medium work as defined in 20 C.F.R. § 404.1567(c) except he cannot reach overhead bilaterally, but could frequently reach in all other directions with the dominant right upper extremity (the left is unlimited).

(AR 18.) The ALJ then held that Plaintiff could return to his past relevant work as a materials handler (DOT # 929.687-030), which is listed as heavy in the Dictionary of Occupational Titles ("DOT") but light as Plaintiff performed it. (AR 21.) The ALJ also held that Plaintiff could perform the occupations of Courtesy Clerk (DOT # 920.687-014), Sandwich Maker (DOT # 317.664-010), and Hospital Cleaner (DOT # 323.687-010), all of which are classified medium exertion occupations in the DOT. (AR 23.)

Plaintiff tore his rotator cuffs on both sides and had surgeries in 2021 and 2013 on both sides to repair the tears. (AR 240-41.) The surgeries were only successful with his left side. The damage to his right rotator cuff is irreparable. (AR 242.) Plaintiff has a high school education and past work as a steel worker, hazardous material removal worker, material handler, and forklift operator. (AR 48-53.) Plaintiff argues that the ALJ erred by improperly rejecting medical opinions and insufficiently supporting his determination that Plaintiff could lift up to fifty pounds, as required for medium exertion occupations. Additionally, Plaintiff argues that the ALJ erred in discounting Plaintiff's testimony regarding his symptoms.

## ANALYSIS

**A.     Standard of Review.**

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. §

405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the Administrative Law Judge ("ALJ"). *Reddick*, 157 F.3d at 720. The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Id.* at 720-21.

**B.     Legal Standard for Establishing a Prima Facie Case for Disability.**

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration or be expected to last for at least twelve months. (*Id.*) Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without consideration of the claimant's age, education, or work experience. 20 C.F.R. § 20 C.F.R. 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC") based on all relevant medical and other evidence in the claimant's case record. 20 C.F.R. §

3

416.920(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, benefits will be denied. *See id.* § 404.1520(f). If the claimant cannot perform past relevant work, the ALJ will proceed to step five. *Id.*

At step five, the ALJ determines whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(f)(1). If the claimant can make the adjustment to other work, the ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.* at 404.1520(e) and (g). There are two ways to make this determination: (1) by the testimony of an impartial vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2. *Id.*

**C.     Weighing Medical Evidence.**

For benefits applications filed after March 27, 2017, such as Plaintiff's, the Social Security Administration's ("SSA") regulations and several Social Security Rulings regarding the evaluation of medical evidence have been amended. Prior to the current regulations, Ninth Circuit law held that an ALJ must provide clear and convincing reasons to reject a treating or examining physician's uncontradicted opinion and must provide specific and legitimate reasons to reject a treating or examining physician's contradicted opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations omitted). However, under the current regulations, "the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *V.W. v. Comm'r of Soc. Sec.*, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (citation omitted) (noting that the 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017). Some district courts have continued to apply the "clear and convincing" and "specific and legitimate" standards as a "benchmark against which the Court evaluates [the ALJ's] reasoning." *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020). Others, including courts in this district, have not. *See, e.g.*, *V.W.*, 2020 WL 1505716, at *13; *Agans v. Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021).

4

Plaintiff argues that the Court should still apply the standards adopted by the Ninth Circuit which provide weight to medical opinions depending in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *See, e.g.*, *Ryan v. Commissioner of Social Security*, 528 F.3d 1194, 1198 (9th Cir. 2008). However, regulatory agencies such as the SSA have broad authority to interpret the statutes they are charged with applying, as long as their regulations are not arbitrary and capricious or contrary to the statute, and courts must defer to validly adopted regulatory interpretations. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *see also Barnhart v. Walton*, 535 U.S. 212, 222 (2002) (granting deference under *Chevron* to SSA interpretation of duration requirement for disability benefits.) Because agencies are experts in the field, an agency's contrary interpretation will supersede a prior judicial construction unless the "prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

The Ninth Circuit's determination of the treating physician rule, and the corollary weight it attributed to treating, examining, or non-examining medical providers was not derived from the unambiguous terms of the statute. *See Agans*, 2021 WL 1388610, at *6 (describing the source and evolution of the treating physician rule). "The treating physician rule . . . was originally developed by Courts of Appeals as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003). When the SSA later adopted regulations approving and formalizing use of the rule in the Social Security disability program, the agency noted that "[n]one of the circuit courts of appeals has held that its treating physician rule is required by the Act or Constitution." *See* Final Rules, Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 (1991). Therefore, the SSA's new regulations regarding the examination of and weight given to medical providers supersedes the Ninth Circuit's treating physician rule. The Court will address the ALJ's evaluation of the medical opinions in accordance with the new regulations.

Under the current regulations, the Commissioner must evaluate the persuasiveness of all medical opinions based on: (1) supportability; (2) consistency; (3) relationship with the claimant;

(4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(a), (c)(1)-(5). "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Explanation of the consideration of the other factors is optional, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* While the new Social Security "regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Christopher Charles A. v. Comm'r of Soc. Sec.*, 2020 WL 916181, at *2 (W.D. Wash. Feb. 26, 2020) (citing 20 C.F.R. §§ 404.1520c(a) and (b) (1), 416.920c(a) and (b) (1)).

The ALJ found that the opinions of Dr. Craig M. Wiseman and Dr. James D. Kelly were persuasive and that the opinions of the State agency medical examiners were not because the State agency medical examiners had insufficient evidence to assess Plaintiff's functional limitations. (AR 20-21.).

**1.    Craig M. Wiseman, M.D.**

On June 7, 2016, Wiseman examined Plaintiff and specifically his right shoulder. Wiseman noted that Plaintiff had a history of shoulder arthroscopy of both shoulders and

6

attempted cuff repair and that Plaintiff has had re-tears of his shoulder. Wiseman observed that Plaintiff has been "treated conservatively of late." (AR 265.) Plaintiff reported to Wiseman that he only has pain with strenuous activities and with repetitive overhead activities. (*Id.*)

Wiseman found that Plaintiff's cuff strength was 4 out of 5 with mild pain. (AR 266.) Plaintiff had a positive apprehension test, as well as positive Neer and Hawkins tests. (*Id.*) Wiseman reviewed Plaintiff's imaging studies which showed retracted suprasinatus tear with atrophy, degenerative labrum, partial tendinosis of other cuff tendons, mild AC joint arthrosis, and some wear of the humeral head noted on the subacromial. (*Id.*) Wiseman found that Plaintiff had good functional range of his right shoulder with pain only in specific activities. Wiseman opined that Plaintiff could not do high impact exercise or activities or heavy labor work, but that he could do low impact modified activities. (*Id.*) Wiseman recommended cortisone injections as needed for shoulder pain management. (*Id.*)

The ALJ incorrectly summarized Wiseman's findings as "no atrophy or deformity in the upper extremities" and "full five out of five strength in the upper extremities." (AR 20.) Additionally, the ALJ did not note the positive apprehension, Neer or Hawkins tests found by Dr. Wiseman. (*Id.*) Although the ALJ found Wiseman's opinion persuasive, the ALJ ignored Wiseman's suggested limitations regarding high impact or heavy labor and limits for Plaintiff to low impact modified activities. However, Wiseman did not include any specific weight limitations, so it is not clear how Wiseman's limitations compare to the ALJ's RFC findings.

  **2. James D. Kelly II, M.D.**

Kelly examined Plaintiff on March 2, 2015. (AR 578.) Plaintiff reported pain, decreased strength, and an inability to sleep on his right shoulder. Plaintiff's issue with his shoulder was from an injury at work on February 7, 2012. A diagnostic arthroscopy in March 2013 revealed an irreparable rotator cuff tear. The biceps tendon ruptured prior to the arthroscopy. (AR 578.) Plaintiff went to Kelly to discuss potential surgical options. (*Id.*)

Upon physical examination, Kelly observed no deltoid or subscapularis atrophy or biceps deformity but did observe supraspinatus fossa and infraspinatus fossa atrophy. (AR 578.) In terms of strength on his right side, Kelly noted Plaintiff had 4+ with pain out of 5 for both his

7

forward flexion and Jobe's abduction, and external rotation at both 0 and 90 degrees was 4 out of 5. (AR 579.) Plaintiff's strength for internal rotation at 0 degrees was 5 out of 5. (*Id*.) Kelly also found that Plaintiff was positive for both Neer and Hawkins. (*Id*.)

Kelly noted that an MRI revealed a massive rotator cuff tear involving the supra and the majority of the infraspinatous with 5 centimeters of medial retraction, 3 centimeters back to front is uncovered, 60-70 percent fatty atrophy of supraspinatous and 30-40 percent of infraspinatous, and mild partial tearing of subscapularis. (AR 580.) The MRI also showed that his biceps tendon was ruptured with no intraarticular presence and that Plaintiff had significant acromioclavicular joint arthritis with spurring and mild glenohumeral arthritis. (*Id*.) Kelly noted that Plaintiff's symptoms and his exam findings were consistent with the MRI. (*Id*.) Kelly opined that "normal activities" could be resumed based upon pain tolerance without any discussion of what such activities included or precluded. Kelly found that Plaintiff did not have any good surgical options. (AR 580.)

Similar to the ALJ's evaluation of Wiseman, the ALJ incorrectly summarized Kelly's findings as "no atrophy or deformity in the upper extremities" and "full five out of five strength in the upper extremities." (AR 20.) The ALJ similarly ignored the positive Neer or Hawkins tests found by Kelly. (AR 20.) However, again, Kelly did not attach any weight limitations any specific weight limitations, so it is not clear how his limitations compare to the ALJ's RFC findings, including that Plaintiff could lift fifty pounds as is required for medium exertion work.

**3.      Other Medical Providers.**

The ALJ summarily rejected the opinions of other medical providers; the ALJ stated that they were conclusory, provided very little explanation, and were based on criteria for worker's compensation. John D. Warbritton, M.D. and Matthew J. Johnson, D.O. were two of the medical providers whose opinions the ALJ summarily dismissed.

**i.      Warbritton.**

On May 5, 2015, Warbritton examined Plaintiff's shoulders and observed that Plaintiff had restricted motion bilaterally, with the right side more significantly limited than the left. Plaintiff reported moderate pain on the right side and slight pain on the left upon forward flexion and

abduction and no pain upon external rotation bilaterally. Warbritton found that Plaintiff had reduced range of motion with forward flexion and abduction bilaterally, but more so on the right side, and equally reduced range of motion bilaterally with internal rotation. (AR 251.) Testing of Plaintiff's supraspinatus strength on the right side was 4+ out of 5 with clear-cut weakness and severe pain on the right side. (*Id*.)

Warbritton also examined Plaintiff's MRI and determined that Plaintiff's right shoulder was strained moderate to severe and was chronic. Plaintiff had a massive rotator cuff tear in his right shoulder which was determined to be irreparable. Warbritton found that Plaintiff should be precluded from forceful repetitive work at or above shoulder level and could not work with his arms outstretched away from his body. (AR 254.) Warbritton also discussed Plaintiff's disability status in the worker's compensation scheme, but as the ALJ noted, the criteria for disability for worker's compensation differs from the Social Security Administration disability evaluation.

Warbritton's findings upon examination were consistent with Wiseman's and Kelly's finding regarding Plaintiff's limited strength and limited range of motion in Plaintiff's right shoulder. The Court finds that the ALJ erred by not considering the substance of Warbritton's findings based on Warbritton's physical examination of Plaintiff or Warbritton's suggested limitations.

### ii. Johnson.

Johnson examined Plaintiff several times in 2013 and 2014. (AR 293-326.) Upon his physical examinations, Johnson observed Plaintiff's shoulder joint atrophy and restricted range of motion, and Johnson also noted that Plaintiff's motor strength was a 5- out of 5.[2] (AR 304-05, 313-14, 320-21.) Johnson found that Plaintiff was positive for Hawkins test but was negative for Neer. (AR 305.) Johnson prescribed Plaintiff pain medication and physical therapy. (AR. 308.) Plaintiff later reported that he did not have much improvement from the physical therapy. (AR 312.)

---

[2] Plaintiff continued to be treated by Johnson, but because those visits postdate Johnson's medical opinions regarding Plaintiff's work limitations, there is no need to address them. (AR 334-35, 341-42, 349-350.)

1          Johnson opined that Plaintiff's work restrictions included "no overhead activities, no
2   activities involving repetitive motion of the neck or involving comparable physical effect."  With
3   respect to Plaintiff's right upper extremity, Johnson determined that Plaintiff "should do no
4   forceful pushing, pulling, twisting, torquing, gripping, grasping, pinching, squeezing, lifting and
5   carrying or other activities involving compatible physical effort."  (AR 326.)  Again, the Court
6   finds that the ALJ erred by failing to consider the substance of Johnson's findings based on
7   Johnson's physical examination of Plaintiff or Johnson's suggested limitations.
8          In sum, the Court finds that the ALJ erred in his consideration of Plaintiff's medical
9   providers.  The ALJ failed to properly consider the findings of Johnson and Warbritton upon their
10  examination of Plaintiff and their suggested limitations.  Additionally, while the ALJ found
11  Kelly's and Wiseman's opinions persuasive, the ALJ misinterpreted their findings.  Moreover, the
12  Court finds that the record is unclear regarding Plaintiff's ability to lift objects up to fifty pounds,
13  as is required for medium work, in light of his right torn rotator cuff.  It is not clear where in the
14  Administrative Record that the ALJ found support for this determination.  Nor is it clear whether
15  the medium exertion occupations the ALJ held that Plaintiff could perform would require working
16  with his arms outstretched away from the body, a limitation found by Warbritton.
17         The ALJ has a duty "to fully and fairly develop the record and to assure that the claimant's
18  interests are considered."  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (internal
19  quotation and citation omitted).  The ALJ's duty to develop the record arises when the evidence is
20  ambiguous or inadequate.  *Id*.  The ALJ has this duty "to assure that the claimant's interests are
21  considered."  *Id*. (internal quotation omitted).  This duty exists even where the claimant is
22  represented by counsel.  *Id*.  The Court finds that the ALJ failed in this duty and that the record
23  needs to be more fully developed regarding Plaintiff's lifting and carrying restrictions, both in
24  terms of weight limits and arm placement (outstretched or close to his body).
25       **4.     ALJ's Errors Were Not Harmless.**
26         The Court finds that the ALJ's errors in properly evaluating the opinions of Wiseman,
27  Kelly, Warbritton and Johnson were not harmless.  A court is precluded from considering an error
28  to be "harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached

a different disability determination." *Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006). A court may find harmless error where the error was inconsequential to the ultimate disability determination. *Id.* at 1055.  The "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).  As noted above, it is unclear whether Plaintiff has the physical ability to lift up to fifty pounds, a requirement for medium work.  Additionally, the vocational expert clarified that Plaintiff could not perform any of the medium exertion jobs the ALJ held Plaintiff could do if Plaintiff were precluded from working with his upper right extremity outstretched away from his body, a limitation that Warbritton imposed but the ALJ failed to consider.  (AR 60.)

While the ALJ also found that Plaintiff could perform his past work as a material handler as he performed it, this finding conflicts with the vocational expert's testimony and Plaintiff's limitation in his RFC to reaching overhead bilaterally.  Upon further questioning, Plaintiff testified that he sometimes had to lift boards above his shoulder in his job as a material handler, such as if he had to put boards on top of a truck.  (AR 59.)  The vocational expert clarified that Plaintiff could not perform the material handler job as performed if he were restricted in his overhead reaching.  (AR 60.)  The vocational expert further testified that sometimes lifting boards up on to a truck would be typical of the material handler position Plaintiff described performing.  (AR 60.)  Thus, the ALJ's finding that Plaintiff could perform his past work as a material handler as he performed it with overhead reaching bilaterally was also in error, which compounds the ALJ's error in determining that Plaintiff could lift up to fifty pounds.

**D.     Plaintiff's Testimony.**

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick*, 157 F.3d at 722.  "The ALJ's findings, however, must be supported by specific, cogent reasons." *Id*.  In evaluating the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 752 F.3d 586, 591 (9th Cir. 2009)).

First, the ALJ must determine if there is "objective medical evidence of an underlying

11

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted).

Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (citation omitted). The ALJ is permitted to consider a number of factors including: (1) inconsistencies in the record concerning Plaintiff's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) Plaintiff's daily activities; and (4) observations of treating and examining physicians and other third parties. *See Smolen*, 80 F.3d at 1284. If the ALJ supports his credibility determination with substantial evidence in the record, the Court may not "to second-guess that decision." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements about intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence or other evidence. (AR 21-22.) The ALJ then discussed the medical evidence in the record, but failed to compare any specific medical records to Plaintiff's testimony or discuss in any detail why he found them not credible. The ALJ was required to do more. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (finding ALJ erred by finding "generally that the claimant's testimony was not credible, but fail[ing] to identify which testimony she found not credible and why."). As the Ninth Circuit explained:

> [The ALJ] simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of "specific reasons" we

12

> must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited. . . .
>
> . . . Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.

*Id*. at 494. Here, the ALJ similarly failed to address which portions of Plaintiff's testimony he did not find credible and why it was not credible. Additionally, "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry*, 622 F.3d at 1234. As discussed above, the Court also notes that the ALJ misconstrued the medical evidence upon which he relied to reject Plaintiff's testimony. Furthermore, the ALJ incorrectly characterized Plaintiff's treatment as conservative despite the fact that Plaintiff had surgery on both shoulders and was seeking approval for another surgery for his right shoulder.

Lastly, the ALJ erred in relying on Plaintiff's daily activities to support his RFC findings. Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1989) (quoting *Smith v. Califano,* 637 F.2d 968, 971-972 (3rd Cir. 1981) that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). The ability to maintain some daily activities does not translate into a negative determination about credibility regarding ability to work. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). "Only if the activity were inconsistent with claimant's claimed limitations would those activities have any bearing on claimant's credibility." *Reddick,* 157 F.3d at 722.

Most of Plaintiff's reported daily activities do not support the ALJ's determination that Plaintiff could lift up to fifty pounds. Plaintiff stated that he could drive without a lot of difficulty

13

and that he drives his grandson to work approximately 5 to 10 times each month. (AR 34-36.) Plaintiff said his left shoulder did improve following surgery, but his right shoulder did not. Plaintiff described difficulty putting a dish into a cupboard, taking a shower, putting on a belt, combing his hair. (AR 36-37.) He is right-handed and he is still learning how to do things with his left hand. (AR 37.)

Plaintiff has trouble lifting his right arm above his waist. (AR 38.) He does not have difficultly sweeping. (AR 39.) He has tried to carry a toolbox with his right arm, which he estimated to be around thirty pounds, and he could "get it there but with a lot of struggle and pain. Basically now . . . I carry everything with my left, anything that's heavy. So I don't know my limitation on poundage, but that is another situation where the shoulder is just not working." (AR 39.) The ALJ's characterization of Plaintiff's testimony that he could carry up to thirty pounds with his right arm is disingenuous. (AR 20.)

Plaintiff also testified that he would have trouble reaching in to grab a gallon of milk if was straight in front of him. He could not do that motion without any pain. (AR 40.)

Plaintiff testified that he dresses and washes himself. (AR 42.) He takes the garbage out, occasionally cleans the dishes, and cleans the parts of bathroom that are waist high or below. (AR 45-46.) Plaintiff stated that the garbage would be five to ten pounds at most. (AR 47.)

The ALJ further relied on notes from Johnson which states that Plaintiff enjoys weight training. (AR 20 (citing AR 296.) In his activities of daily living as reported to Johnson, Plaintiff stated that he performed self-care such as washing, bathing, dressing and using the bathroom but that it was with discomfort. (AR 296.) Plaintiff further reported that was unsure of how much weight he could lift but that he could only push, pull, or carry light weight at that time. (*Id.*) Under social history, Johnson's report states that Plaintiff works as a steel working performing primarily building activities with heavy equipment involving his upper extremities and that he enjoys weight training. (AR 296.) This appears to be a discussion of what Plaintiff has done and enjoyed before he tore his rotator cuffs. On remand, if the ALJ intends to rely on this statement contained in Johnson's report, he should question Plaintiff regarding his weight training activities *after* his shoulder injuries.

14

1     The Court finds that ALJ's errors in not properly considering Plaintiff's testimony were
2 not harmless.  If his testimony were credited, his RFC would be more limited with respect to his
3 lifting and reaching limitations, precluding his past work and the medium exertion jobs selected by
4 the vocational expert.

**E.    Remedy.**

In reviewing a Social Security Commissioner's decision, a court may remand the case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Moreover, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and remanding for the consideration of new evidence instead of awarding benefits); *see also Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("Because neither the ALJ nor the vocational expert had the full picture before them, remand for further proceedings is particularly appropriate.").

Here, the Court finds that there are additional issues that must be resolved, and it is not clear whether the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Accordingly, the Court will remand for further proceedings.  On remand, the ALJ must appropriately evaluate and further develop the record regarding Plaintiff's lifting and carrying restrictions, both in terms of weight limits and arm placement (outstretched or close to his body). Additionally, the ALJ must clarify the determination regarding Plaintiff's ability to perform his past work in light of his limitations and the testimony by the vocational expert.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment.  The Court vacates the Commissioner's final decision and REMANDS for further administrative proceedings consistent

with this order. The Court shall issue a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED**.

Dated: November 9, 2021

_____
SALLIE KIM
United States Magistrate Judge